UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAYS INNS WORLDWIDE, INC., a Delaware Corporation,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>JPM, INC., a Georgia Corporation, and JAYANTILAL SHAH, an individual,<br><br>　　　　　　　　　　　　Defendants. | Civ. No. 13-3017 (KM)(MCA)<br><br>OPINION |

**MCNULTY, U.S.D.J.:**

　　　This matter comes before the Court on the unopposed motion of Plaintiff Days Inns Worldwide, Inc. ("DIW") for default judgment against Defendants, JPM, Inc., and Jayantilal Shah, pursuant to Fed. R. Civ. P. 55(b)(2). For the reasons set forth below, I will enter a default judgment.

## I. BACKGROUND

　　　DIW is a corporation organized under Delaware law and based in Parsippany, New Jersey. Docket No. 1 ("Compl.") ¶ 1. Defendant JPM, Inc. ("JPM") is a corporation organized under Georgia law, with a principal place of business in Rincon, Georgia. *Id.* ¶ 2. Defendant Jayantilal Shah is a principal of JPM who resides in Rincon, Georgia. *Id.* ¶ 3.[1]

　　　On October 3, 1997, DIW entered into a License Agreement with Jayantilal Shah for the operation of a forty-room guest lodge facility located at 582 Columbia Avenue, Rincon, Georgia 31326, Site No. 00654-92227-03. *Id.* ¶ 10; Exhibit A ("License Agreement"). On May 4, 2000, Jayantilal Shah, DIW, and JPM entered into an Assignment and Assumption Agreement ("Assignment

---

[1]　　Pursuant to a notice of dismissal, Docket No. 7, the additional Defendants, Gulabbhai P. Maisuria and Manu D. Patel, were terminated as parties on December 30, 2013. The matter was dismissed as to these Defendants with prejudice.

1

Agreement") whereby JPM assumed all of Shah's right and obligations under the License Agreement. *Id.* ¶ 11; Exhibit B ("Assignment Agreement"). Shah provided DIW with a guaranty of JPM's obligations under the License Agreement upon the effectuation of the Assumption Agreement. *Id.* ¶ 20; Exhibit C ("Guaranty").

Pursuant to the License Agreement, JPM was obligated to operate a Days Inn guest lodging facility for twenty-two years and to make certain periodic payments to DIW for royalties, service assessments, taxes, interest, reservation system user fees, and other recurring fees (collectively referred to herein as "recurring fees"). *Id.* ¶¶ 12, 13. JPM agreed to pay interest on delinquent payments,[2] to prepare and submit monthly reports to DIW, to maintain accurate financial information, and to allow DIW to examine and audit financial records. *Id.* ¶¶ 14–16.

Under the terms of the Agreement, DIW could terminate the Agreement for various defaults. In the event of termination, JPM agreed to pay liquidated damages to DIW in accordance with a formula set for in the License Agreement. The License Agreement also provided that the non-prevailing party would be required to pay attorneys' fees and costs incurred by the prevailing party to enforce the License Agreement or to collect amounts owed. *Id.* ¶¶ 17–19.

On November 9, 2011, DIW advised JPM that it owed DIW approximately $115,739.25 in outstanding recurring fees. JPM was given ten days in which to cure the default and was warned that continued default—a breach of the License Agreement—could result in termination of the License Agreement. *Id.* ¶ 23. A March 15, 2012 letter advised JPM that it now owed $130,712.71 in outstanding recurring fees. JPM was again given ten days to cure the default. *Id.* ¶ 24. By letter dated March 28, 2012, DIW exercised its right to terminate the License Agreement because of JPM's continued default. *Id.* ¶ 25. DIW informed JPM that it was required to pay $80,000 in liquidated damages for premature termination and all outstanding recurring fees. *Id.* ¶ 25.

DIW now seeks a judgment against JPM and Shah, jointly and severally, awarding various remedies provided for in the License Agreement. Specifically, DIW seeks: (1) liquidated damages in the amount of $80,000, pursuant to

---

[2] Pursuant to the License Agreement, interest would be payable "on any past due amount payable to" DIW under the Agreement "at a rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid." Compl. ¶ 14.

2

Section 12.1 of the License Agreement; and (2) recurring fees in the amount of $137,286,[3] pursuant to Section 7 and Schedule C of the License Agreement. *Id.* at 6–11.

As to the liquidated damages and recurring fees it seeks, DIW alleges that it is entitled to prejudgment interest, pursuant to section 7.3 of the franchise agreement. *Id.* ¶ 14. DIW also alleges that it is entitled to its attorneys' fees and costs pursuant to Section 17.4 of the License Agreement, as it is the prevailing party and it incurred these fees and costs while pursuing the defaulted amounts owed. *Id.* ¶¶ 19, 22.

The Complaint was filed on May 10, 2013. Docket No. 1. The Summons and Complaint were served upon Defendants JPM, Inc. and Jayantilal Shah on June 1, 2013. Docket No. 5. Pursuant to Fed. R. Civ. P. 12(a)(1), Defendants had 21 days to respond to the complaint; their time to respond has long since expired and Defendants have not answered or otherwise responded to the Complaint. On DIW's request, the Clerk of Court entered default against the Defendants on July 26, 2013. On April 21, 2014, DIW filed the now-pending motion for default judgment against JPM and Shah. Docket No. 11.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. Section 1332, as the Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000. *See* Compl. ¶ 6.

## II. DISCUSSION

### A. Legal Standard for Entry of Default Judgment

"[T]he entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). Because the entry of a default judgment prevents the resolution of claims on the merits, "this court does not favor entry of defaults and default judgments." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984). Thus, before entering default judgment, the Court must determine whether the "unchallenged facts constitute a legitimate cause of action" so that default judgment would be permissible. *DirecTV, Inc. v. Asher*, 03-cv-1969, 2006 WL 680533, at *1 (D.N.J. Mar.14, 2006) (citing Wright, Miller, Kane, 10A Federal

---

[3]   The $137,286.00 figure is inclusive of interest, which is calculated at the legal rate of 1.5% per month, pursuant to Section 7.3 of the License Agreement.

3

Practice and Procedure: Civil 3d § 2688, at 58–59, 63).

"[D]efendants are deemed to have admitted the factual allegations of the Complaint by virtue of their default, except those factual allegations related to the amount of damages." *Doe v. Simone*, CIV.A. 12-5825, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013). While "courts must accept the plaintiff's well-pleaded factual allegations as true," they "need not accept the plaintiff's factual allegations regarding damages as true." *Id.* (citing *Chanel, Inc. v. Gordashevsky*, 558 F.Supp.2d 532, 536 (D.N.J. 2008)). Moreover, if a court finds evidentiary support to be lacking, it may order or permit a plaintiff seeking default judgment to provide additional evidence in support of the allegations. *Doe*, 2013 WL 3772532, at * 2.

Before a court may enter default judgment against a defendant, the plaintiff must have properly served the summons and complaint, and the defendant must have failed to file an answer or otherwise respond to the complaint within the time provided by the Federal Rules, which is twenty-one days. *See Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 18–19 (3d Cir. 1985); Fed. R. Civ. P. 12(a).

Here, the Defendants were properly served and have failed to respond to the Complaint. Defendants' time to respond to the Complaint has long since expired. The clerk has entered default. Accordingly, I am satisfied that the prerequisites to filing a default judgment are met. *See Gold Kist, Inc.*, 756 F.2d at 18–19.

I must now evaluate the following three factors: (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default. *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir.1987)). Those factors, considered in light of the record of this case, weigh in favor of entry of a default judgment.

### B. Analysis

As to the first factor, I am disadvantaged, of course, by the lack of any submission by Defendants. My independent review of the record before me, however, reveals no suggestion that DIW's claims are legally flawed or that there is a meritorious defense to them. *See Doe*, 2013 WL 3772532, at *5.

4

Accepting the factual allegations as true, I find that Plaintiffs have stated a claim for breach of the License Agreement and Guaranty.

Under New Jersey law, "[t]o state a claim for breach of contract, [a plaintiff] must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007).

I am satisfied that DIW has set forth a legally sufficient claim of breach of contract, and I cannot, from the limited materials before me, discern any meritorious defense. DIW has set forth the elements necessary to show the existence of two valid, enforceable contracts—the License Agreement and the Guaranty signed by Shah. DIW has alleged facts demonstrating that JPM and Shah are bound by those contracts; that they are answerable for any breach by JPM, including failure to pay recurring fees; that JPM's actions caused the termination of the contract; and that from the breach flowed various types of damages and monetary obligations that remain unpaid. Meanwhile, there are no facts before me indicating that Plaintiff did not perform its own obligations.

The second and third factors also weigh in favor of default. Defendants were properly served on June 1, 2013, well over a year ago, but have failed to appear and defend themselves in any manner. *See Teamsters Pension Fund of Philadelphia & Vicinity v. Am. Helper, Inc.*, CIV. 11-624 JBS/JS, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011). Absent any evidence to the contrary, "the Defendant's failure to answer evinces the Defendant's culpability in its default. There is nothing before the Court to show that the Defendant's failure to file an answer was not willfully negligent." *Id.* at *4 (citing *Prudential Ins. Co. of America v. Taylor*, No. 08–2108, 2009 WL 536403 at *1 (D.N.J. February 27, 2009) (finding that when there is nothing before the court to suggest anything other than that the defendant's willful negligence caused the defendant to fail to file an answer, the defendant's conduct is culpable and warrants default judgment).

The only possible conclusion based on the record before me is that Defendants are liable for JPM's failures under the License Agreement. Accordingly, I find that the entry of a default judgment is appropriate.

5

## C. Remedies

DIW seeks three specific types of compensation totaling $270,500.71: 1) liquidated damages in the amount of $123,986.75 (*i.e.*, $80,000 principal plus prejudgment interest); 2) recurring fees in the amount of $137,286 (principal plus prejudgment interest); and 3) attorneys' fees and costs in the amount of $9,227.96. *See* Docket No. 11-1 ("Proposed Judgment"). Plaintiff has submitted documentary evidence in support of its demands, while Defendants have, obviously, submitted nothing. An *ex parte* "evidentiary hearing" would serve little additional purpose, so I rule based on the record before me.

I will grant DIW's request for recurring fees, as set forth in Section 7 and Schedule C of the License Agreement. DIW has documented recurring fees in the amount of $137,286.00, which includes interest at a rate of 1.5% *See* Docket No 1, Fenimore Aff. ¶ 19, Exhibit G (itemized statement of recurring fees).

I will not grant DIW's request for liquidated damages. New Jersey has adopted the Restatement approach, and will not enforce a liquidated damages provision "unless (a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and (b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation." *MetLife Capital Financial Corp. v. Washington Ave. Associates L.P.*, 159 N.J. 484, 493, 732 A.2d 493 (1999) (quoting Restatement of Contracts § 339 (1932)); *see also* N.J.S.A. 12A:2-718 (treating the prongs of the test as elements of "reasonableness" in evaluating a stipulated damages provision). The "overall single test of validity" of a liquidated damages provision is reasonableness under the totality of the circumstances. *MetLife Capital Financial Corp.*, 159 N.J. at 493. DIW here asserts an awkward combination of actual and liquidated damages. It does not adequately explain the extent to which they might overlap.[4] Nor does DIW proffer a basis for the Court to

---

[4] I note, for example, that the Liquidated Damages are claimed as "future" damages as of the date of the "termination" on April 30, 2011. Fenimore Aff. ¶ 26. As of March 15, 2012, however, the correspondence is still referring to a "default" (not a termination), offering the opportunity to cure, and calculating actual, accrued damages (not future or estimated damages), as of that date, in the amount of $130,712.71. Fenimore Aff. Ex. E. On this motion, DIW is claiming that entire amount in addition to the "future" liquidated damages. And interest on the entire $80,000 is calculated on an accelerated basis from April 30, 2011. (Perhaps 2012 was intended.) When a default is claimed, a party is expected to exercise particular care and to

6

conclude that the liquidated damages provision is a reasonable estimate of difficult-to-calculate actual damages. The liquidated damages provision does suggest a formula, based on recurring fees for the preceding 24 months, but it also provides that "Liquidated Damages shall not be less than the product of $2,000 multiplied by the number of guest rooms in the Facility." Agreement § 12.1. DIW has not calculated that formula, but rests on the $2,000 per room minimum amount—which comes out to $80,000, plus $43,986.75 interest. The relation between that minimum amount and a reasonable estimate of actual damages is not explained. At any rate, DIW does not apportion its damages in detail. Nor does it explain how liquidated "future" damages ("future" as of 2011, that is) relate to the actual history of the property since then. Nor does DIW explain how these liquidated damages might interact with its duty to mitigate after terminating the contract. I will therefore exercise my discretion to disallow this component of the damages.

Finally, as to attorneys' fees and costs, I adopt DIW's analysis. DIW has adequately documented its attorneys' fees, which do not seem unreasonable or disproportionate. *See* Franchise Agreement § 17.4 (giving prevailing party the right to reasonable attorneys' fee recovery); Docket No 1, Fenimore Aff. ¶ 27, Couch Aff. ¶¶ 9–11, Exhibit B. I will thus enter a judgment that includes $7,800 in attorneys' fees and $1,427.96 in costs, for a total of $9,227.96.

### III. CONCLUSION

For the foregoing reasons, a default judgment will be entered in favor of Plaintiff Days Inns Worldwide, Inc., in a total amount of $146,513.96. A written Order and Judgment will be entered separately.

*[signature]*
**KEVIN MCNULTY**
**United States District Judge**

Dated: August 4, 2014

---

explain its calculations in sufficient detail, because no adversary is present to probe their accuracy. I am not satisfied that threshold has been met.

7